Alex R. Straus (SBN 321366)
**MILBERG PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

Harper T. Segui
**LEE SEGUI PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@leesegui.com

*Attorneys for Plaintiffs and the Putative Classes*

*Additional attorney on signature page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAITLIN OROZCO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSIDLA, INC. D/B/A OLD SCHOOL LABS,<br><br>Defendant. | CASE NO. 2:26-cv-7820<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>1. **VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES**<br>2. **VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**<br>3. **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**<br>4. **VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**<br>5. **FRAUDULENT MISREPRESENTATION**<br>6. **FRAUDULENT CONCEALMENT/OMISSION**<br>7. **UNJUST ENRICHMENT** |

Plaintiff Caitlin Orozco ("Plaintiff" or "Orozco") brings this Class Action Complaint against Defendants Cosidla, Inc. D/B/A Old School Labs, (collectively "Defendant" or "OSL"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**INTRODUCTION**

1.      This action arises from Defendant's deceptive and discriminatory marketing of a creatine-based dietary supplements specifically targeted to women, despite the absence of any legitimate, material, or scientifically supported gender-based differences in the product's formulation, ingredients, or gender specific efficacy.

2.      Creatine is a well-studied compound widely used to support muscle energy production, strength, and athletic performance. There is no gender specific creatine or formulation of creatine that exists. [1]

3.      Notwithstanding this, companies like OSL have deliberately marketed its product as a "female-focused" or "female-specific" creatine supplement, employing gendered branding, packaging, and advertising to distinguish it from functionally identical products marketed to the general population.

---

[1] As well as collagen and BCAA 2:1:1, also included in the products.

1

CLASS ACTION COMPLAINT

4.     This marketing strategy is not grounded in science. Instead, it is designed to exploit gender-based perceptions and consumer expectations, enabling companies to differentiate its product in the marketplace and, upon information and belief, charge a premium price relative to comparable non-gendered creatine supplements.

2.     Defendant OSL is one such company engaged in such discriminatory marketing practices.

3.     OSL is a nutritional supplement manufacturer that has been in business since 2014. OSL designs, formulates, manufactures, markets, and sells a wide range of supplements throughout the United States, including creatine products marketed under the "Old School Labs" brand name. OSL sells its products through major retailers including Amazon and Walmart.

4.     OSL's gender-based marketing scheme is anything but subtle. OSL manufactures and sells creatine products that it markets specifically "for Women" - including the 1) Creatine Monohydrate *for Women* and 2) Creatine Monohydrate Collagen MADE FOR WOMEN Stick Packs (collectively, the "Creatine" or "Class Products").[2] OSL represents that these products are "Designed for Women," "Women-Centric," "Women-focused," and feature a "Women-Concentrated Formula."[3]

---

[2] https://shop.oldschoollabs.com/collections/creatine (Last Accessed April 24, 2026).
[3] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513;
https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women-stick-packs?variant=43731141951585 (Collectively, Last Accessed April 24, 2026).

2
CLASS ACTION COMPLAINT

5.      Below are some photos found on OSL's website:[4]

  

6.      OSL uses pink and white packaging, markets these products as "Booty-Building," and claims they are "Backed By Thousands of Happy Women."[5] Through this marketing, OSL leads reasonable consumers to believe the Creatine contain unique formulations, ingredients, or benefits specifically tailored for women's bodies.

7.      The packaging for the Creatine, fails to disclose that there is no special "female formulation" or science supporting these representations. Instead, it spends a large portion of its packaging space as follows:

**WHY CREATINE FOR WOMEN?**
Our purity-tested Creatine Monohydrate is the most scientifically validated from available. What's more, each serving contains

[4] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513 (Last Accessed April 24, 2026); *see also* https://www.walmart.com/ip/5000mg-Creatine-Monohydrate-Powder-Optimized-Women-2000mg-Collagen-1g-BCAA-2-1-1-No-Fillers-Supports-Lean-Muscles-Recovery-Pump-Energy-Stamina-Micron/16410123145 (Last Accessed April 24, 2026); https://www.amazon.com/dp/B0CRL99K4F?ref=nb_sb_ss_w_as-reorder_k0_1_15&amp=&crid=20NQQVROXKGWM&sprefix=old%2Bschool%2Blabs&th=1 (Last Accessed April 24, 2026).
[5] *Id.*; *see also*, https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women-stick-packs?variant=43731141951585 (Last Accessed April 24, 2026).

3
CLASS ACTION COMPLAINT

Hydrolyzed Bovine Collagen and BCAA to support muscle growth and recovery. Hydrolyzed Bovine Collagen provides proline and glycine, amino acids important for building connective tissue, while BCAAs are crucial for muscle protein synthesis to reduce soreness and fatigue.

8.     These female centric representations on packaging and made through marketing and advertising on OSL and retailer websites and other media are collectively referred to as "Gender Based Marketing Representations."

9.     In reality, there are no gender specific ingredients, or combination of ingredients, used in the Creatine that are different than the same ingredients used in gender neutral products of the same nature. In other words, the Creatine contain no "gender-specific" ingredients or amounts that support OSL's marketing, and OSL's "Classic" creatine product and other gender-neutral creatine products have the same amount of creatine- the main ingredient.[6]

10.     The active ingredient, creatine monohydrate, is identical across all of OSL's creatine products at 5 grams per serving. The additional ingredients in the Creatine (hydrolyzed bovine collagen and BCAA 2:1:1) provide no unique formulation, separately or combined, for women as compared to men and are sold as gender-neutral supplements by numerous manufacturers.

11.     Plaintiffs have confirmed through expert consultation, that there is no

---

[6] See e.g. https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513 (5mg of creatine monohydrate), compared to https://shop.oldschoollabs.com/collections/creatine/products/classic-creatine?variant=31448105255009 (5000 mg of creatine monohydrate)(Last Accessed April 24, 2026).

CLASS ACTION COMPLAINT

such variety or formulation of creatine that can be "designed or manufactured with a female specific concentrated formula" or in a "women-centric" manner.[7]

12.    OSL uses Gender Based Marketing Representations to target women and mislead them into choosing products marketed to them, as opposed to honest gender-neutral marketing of the same or similar products made by other manufacturers.

13.    OSL's Gender Based Marketing Representations exploit stereotypes and capitalize on women's desire for products specifically suited to their bodies to induce female consumers to purchase these products based on false representations of differentiation.[8]

14.    Plaintiff Orozco and other Class Members were misled by Gender Based Marketing Representations into believing they were purchasing products with unique formulations and benefits for women when no such differentiation exists.

---

[7] *See also* "While the goals may differ—men often seeking joint durability and women focusing on bone density and skin health—the biological solution is the same. Collagen peptides provide the specific amino acid building blocks required to maintain the structural "mesh" of the body, regardless of the user's sex… **Myth: Men should only take "Male-Marketed" Collagen Fact:** Many brands put collagen in a dark bottle and call it "Collagen for Men," but the ingredient list is usually identical to any other high-quality peptide. You don't need a gendered product; you need a clean product." https://www.bubsnaturals.com/blogs/all-about-collagen/can-men-and-women-take-the-same-collagen-the-science-of-recovery#:~:text=Key%20Takeaway:%20While%20the%20goals,rate%20of%20loss%20accelerates%20sharply; "Collagen for men doesn't work much differently than collagen for women." https://www.vitalproteins.com/blogs/stay-vital/is-collagen-good-for-men

[8] Although not the focus of this litigation, OSL also falsely represents that its creatine products "improve[s] cognitive function." Like the Gender Based Marketing Representations, OSL's cognitive benefit claims are false, misleading, and not substantiated by reliable scientific evidence. It is clear that OSL has engaged in a pattern of making false and misleading representations regarding the benefits of its creatine products, including those at issue here.

CLASS ACTION COMPLAINT

15.     Had Plaintiff and other Class Members known the truth, they would not have purchased the Creatine or would have purchased honestly marketed gender-neutral alternatives.

16.     OSL's deceptive conduct violates multiple consumer protection laws, including the California Consumers Legal Remedies Act, the California False Advertising Law, the California Unfair Competition Law, and the Illinois Consumer Fraud and Deceptive Trade Practices Act. OSL has been unjustly enriched by its scheme to mislead female consumers through false gender-based marketing claims.

17.     Accordingly, Plaintiff brings this class action on behalf of herself, and all others similarly situated to halt OSL's deceptive practices, obtain restitution and damages for consumers harmed by OSL's misconduct, and ensure that OSL markets its products truthfully going forward.

## PARTIES

18.     Plaintiff Caitlin Orozco is a citizen and resident of Illinois.

19.     Defendant Cosidla, Inc. d/b/a Old School Labs is incorporated under the laws of Delaware, with its principal place of business at 324 S. Beverly Dr., Suite 235, Beverly Hills, California 90212.

20.     At all times relevant herein, Defendant has been engaged in the design, formulation, manufacture, marketing, distribution, and sale of nutritional supplement products, including creatine products and the Class Products, throughout the United States, including in the states of California and Illinois.

CLASS ACTION COMPLAINT

21.     At all times relevant herein, Defendant designed, formulated, and marketed the Products in and from the state of California.[9]

22.     Defendant's packaging of the Products state that their products are "Distributed Exclusively By: OLD SCHOOL LABS, 25 Mauchly Ste. 314 Irvine, CA 92618."

23.     At all times relevant herein, Defendant's misconduct and related decision-making described herein, occurred in and originated from its headquarters in the state of California.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act because: (i) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff is a citizen of Illinois and Defendant is a Delaware corporation with its principal place of business in California. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

25.     This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District, transacts business in this District,

---

[9] "All our products are proudly formulated at our headquarters in Southern California- the birthplace of the Golden Era of fitness, and our brand."
https://shop.oldschoollabs.com/?srsltid=AfmBOorXDjVX7AQfuo4Tf2sBxfVYgTIkwulaczFsjd51 6cedbknuhCD8 (Last Accessed June 27, 2026).

CLASS ACTION COMPLAINT

markets and sells products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

26.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### FACTUAL ALLEGATIONS

**OSL's Creatine Product Line and Marketing Scheme**

27.    OSL was founded in 2014, and for the past twelve years has manufactured and sold nutritional supplement products it describes as "Born in the Golden Era of Bodybuilding."[10]

28.    OSL provides a wide range of supplements "[f]rom weightlifters and fighters to runners, cross-trainers, and everyday [sic] high performers."[11] OSL claims that its products are "clean, tested, premium supplements for anyone serious about pushing their limits."[12]

29.    OSL's product line includes numerous muscle building and preserving supplements, including multiple creatine products.[13]

30.    In addition to the Creatine products at issue here, OSL manufactures and sells a "Classic" version of Creatine Monohydrate that is not specifically marketed to

---

[10] https://shop.oldschoollabs.com/pages/about-us (Last Accessed April 24, 2026).
[11] *Id.*
[12] *Id.*
[13] https://shop.oldschoollabs.com/collections/supplements (Last Accessed April 24, 2026).

CLASS ACTION COMPLAINT

women or men.[14]

31.     However, while the "Classic" version contains marketing language and colors that would typically be used to target men, OSL does not manufacture or sell a creatine product explicitly marketed as being "for men."

**Identical Formulations Despite Gender-Based Marketing**

32.     Despite OSL's extensive marketing of the Creatine as specially formulated for women, the ingredients in these products are functionally identical to those in OSL's "Classic" creatine product and other gender-neutral creatine supplements sold by competitors.

33.     The supplement facts for the Women's Creatine Products list the following ingredients per serving (8g scoop, 30 servings per container):[15]

  o Creatine Monohydrate: 5 g

  o Hydrolyzed Bovine Collagen: 2 g

  o BCAA 2:1:1 Instant: 1 g

  o Other Ingredients: None

---

[14] https://shop.oldschoollabs.com/collections/creatine/products/creatine-gummies?variant=41951264571489; https://shop.oldschoollabs.com/collections/creatine/products/classic-creatine-capsules?variant=41531986411617; https://shop.oldschoollabs.com/collections/creatine/products/classic-creatine?variant=31448105255009 (Collectively, Last Accessed April 24, 2026).
[15] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513; *see also https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women-stick-packs?variant=43731141951585* (Collectively, Last Accessed April 24, 2026).

9



34.     The supplement facts for OSL's "Classic" Creatine Monohydrate list the following ingredients per serving (5g scoop, 60 servings per container):[16]

    a.  Creatine Monohydrate: 5,000 mg

    b.  Bacillus coagulans: 10 mg (150 Million CFU/Serving at time of manufacture)

---

[16] https://shop.oldschoollabs.com/collections/creatine/products/classic-creatine?variant=31448105255009 (Last Accessed April 24, 2026).

CLASS ACTION COMPLAINT

**Supplement Facts**

Serving Size: 1 Scoop (5 g)
Servings Per Container: 60

**Amount Per Serving**

Creatine Monohydrate.............................5,000 mg*
Bacillus coagulans.........................................10 mg*
  (150 Million CFU/Serving at time of manufacture)

*Daily Value not established.

    

purity tested    gluten free    keto friendly    non GMO    GMP quality

35.    Critically, 5 grams and 5,000 milligrams are identical amounts. OSL uses this difference in unit presentation to create a false appearance of differentiation between its Women's Creatine Products and its "Classic" product.

36.    By marketing the women's product as containing "5g" and the "Classic" version as containing "5,000mg," OSL creates the misleading impression that the women's product contains a smaller, more tailored amount of creatine when the amounts are in fact the same.

37.    None of the ingredients in the Women's Creatine Products, separately or in combination, provide any uniquely formulated benefit to women as compared to men or the general population.

38.    Creatine monohydrate, the primary active ingredient in the Creatine products, is a widely-used dietary supplement that is a nitrogen containing compound that increases phosphocreatine stores in muscle tissue, which may aid energy

11

production during physical activity.

39.     Creatine is not a supplement specific to women and is sold as a gender-neutral product by a wide variety of manufacturers, including major supplement manufacturers like Thorne and Nature Made.[17] There is no difference in creatine monohydrate formulated for women versus creatine monohydrate formulated for men or the general population.

40.     The more minor ingredients in the Creatine follow the same.

41.     Hydrolyzed bovine collagen is a protein supplement derived from cowhide or bones that supports skin, joint, and bone health. Although collagen is heavily marketed to women, there is no difference in the formulation of collagen in women's versus gender-neutral supplements.[18]

42.     As industry sources confirm,

> While the goals may differ - men often seeking joint durability and women focusing on bone density and skin health - the biological solution is the same. Collagen peptides provide the specific amino acid building blocks required to maintain the structural 'mesh' of the body, regardless

---

[17] *See*
https://www.thorne.com/products/dp/creatine?gad_source=1&gad_campaignid=23086295444&gbraid=0AAAAADLUbJWwqirEQQSQ4fpMgSr_OlaoS&gclid=CjwKCAjwqazPBhALEiwAOuXqdL0ZzF0Bc8msAzhp1uSbBoYwjiG0hscWLcwsVD36cxsd6Au-wMSSQBoCmokQAvD_BwE;
https://everymarket.com/products/nature-made-creatine-monohydrate-powder-5-g-per-serving-unflavored-drink-mix-powder-muscle-support-450-g-90-day-supply?utm_source=google&utm_medium=cpc&utm_campaign=22510040093&utm_content=&utm_term=&gad_source=1&gad_campaignid=22503529089&gbraid=0AAAAACe9t8bNAQPAhugJV9GrVLQ6FuJyO&gclid=CjwKCAjwqazPBhALEiwAOuXqdKDIeGuF5vfI-PXpjYGgUuPAG5uxjZFQA46kyPUm7Ps5YS5KLmrNjBoCtFoQAvD_BwE
[18] https://www.bubsnaturals.com/blogs/all-about-collagen/can-men-and-women-take-the-same-collagen-the-science-of-recovery#:~:text=Key%20Takeaway:%20While%20the%20goals,rate%20of%20loss%20accelerates%20sharply; https://www.vitalproteins.com/blogs/stay-vital/is-collagen-good-for-men

of the user's sex.[19]

43.     The same sources note that "many brands put collagen in a dark bottle and call it 'Collagen for Men,' but the ingredient list is usually identical to any other high-quality peptide,"[20] and "Collagen for men doesn't work much differently than collagen for women."[21]

44.     BCAA 2:1:1 refers to branched-chain amino acids in a 2:1:1 ratio (leucine:isoleucine:valine). These amino acids reduce muscle fatigue and accelerate recovery. BCAA supplements are not formulated specifically for the female body versus the male body and are sold as gender-neutral products by a variety of manufacturers.

45.     Again, and as confirmed by Plaintiff's consulting expert, creatine, collagen, and BCAA cannot be "designed" or "manufactured" in any manner that is uniquely tailored to women, nor can it be formulated in a legitimately "women-centric" way.

46.     The creatine molecule is the same regardless of the intended user. There is no difference in creatine used in products sold as either gender-neutral or "for

---

[19] https://www.bubsnaturals.com/blogs/all-about-collagen/can-men-and-women-take-the-same-collagen-the-science-of-recovery#:~:text=Key%20Takeaway:%20While%20the%20goals,rate%20of%20loss%20accelerates%20sharply.

[20] https://www.bubsnaturals.com/blogs/all-about-collagen/can-men-and-women-take-the-same-collagen-the-science-of-recovery#:~:text=Key%20Takeaway:%20While%20the%20goals,rate%20of%20loss%20accelerates%20sharply

[21] https://www.vitalproteins.com/blogs/stay-vital/is-collagen-good-for-men

13

women."

47.    The same is true of the other two ingredients.

**OSL's Extensive Female-Centric Marketing Representations**

48.    OSL markets the Creatine through multiple channels, including its website at shop.oldschoollabs.com, Amazon, and Walmart.

49.    The product packaging for the Creatine features pink and white color schemes designed to appeal to female consumers.

50.    The front of the canister prominently displays "CREATINE MONOHYDRATE *for Women*" in large text.[22] The front of the Sticks, prominently displays "CREATINE MONOHYDRATE + COLLAGEN… MADE FOR WOMEN."[23]

51.    The packaging also queries to the consumer, "WHY CREATINE FOR WOMEN," followed by an explanation of purity testing validations and an explanation of how the formula works scientifically, as described herein.

52.    These packaging attributes, separately and collectively, are designed to mislead women into believing this product was engineered, formulated, and tailored to the female body when that is not scientifically plausible to accomplish.

53.    On its website and in marketing materials, and as part of its Gender

[22] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513 (Last Accessed April 24, 2026).
[23] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women-stick-packs?variant=43731141951585 (Last Accessed April 24, 2026).

CLASS ACTION COMPLAINT

Based Marketing Representations, OSL makes the following representations about the Creatine products:[24]

- o "Designed for Women"

- o "Women-Centric"

- o "for Her"

- o "Women-focused"

- o "Women-Concentrated Formula"

- o "Backed By Thousands of Happy Women"

54.    OSL's website features a comparison chart titled "BUILT BETTER. GET THE OSL ADVANTAGE."[25] This chart compares OSL's Women's Creatine Products to "OTHER BRANDS" across multiple features.

---

[24] https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women?variant=41553827004513; https://shop.oldschoollabs.com/collections/creatine/products/creatine-monohydrate-for-women-stick-packs?variant=43731141951585 (Collectively, Last Accessed April 24, 2026).
[25] Id.

CLASS ACTION COMPLAINT



55.    The first feature listed is "Women Concentrated Formula," which OSL marks with a picture of the bottom of a presumably woman's torso for its products and an "X" for other brands.[26] This representation explicitly suggests that OSL's product contains a unique formulation concentrated for women that competing products lack.

56.    OSL represents that its Women's Creatine Products are supported by "Over 50,000 happy customers" and are backed by product testing and quality standards including "Third-Party Lab Tested" and "GMP" (Good Manufacturing Practices) certification.[27]

---

[26] *Id.*
[27] *Id.*

CLASS ACTION COMPLAINT

57.     OSL also claims the Women's Creatine Products now come in a "pink lemonade" flavor, further reinforcing the gender-based marketing through flavor naming and color associations.[28]

### OSL's Deceptive Scheme to Target Female Consumers Using Female Based Representations

58.     OSL's systematic use of female-centric marketing representations, combined with its presentation of identical ingredients in a manner designed to appear different, constitutes a deliberate scheme to mislead female consumers.

59.     By marketing the Creatine with the Gender Based Marketing Representations, including "Designed for Women" and featuring a "Women-Concentrated Formula," OSL leads reasonable consumers to believe these products contain unique ingredients, formulations, or benefits specifically tailored for women's bodies and fitness goals.

60.     In reality, as detailed above, the Women's Creatine Products contain no ingredients or formulations unique to women. The creatine, collagen, and BCAA in

---

[28] https://www.amazon.com/Old-School-Labs-Monohydrate-Post-Workout/dp/B0F6WBTY4L/ref=sr_1_4?crid=3JNSDC5Z8R5WR&dib=eyJ2IjoiMSJ9.pBxN3T04G_eW7je3xKdeEDSaH8WBH69d1T4WUU8EaD9GGTjhJhlf4_YiX8QX4F9XTsH8sG6deZOq4QtZFhVgBgjdQpuIVtAfDMZkMR6oZy-KVCzphrY0onbA1JwYk5FKSl1lWJb-kWPVqvFoQZp3l-jm5ODlxzboRQbOgf8OXwe2zXxoJCG3qaowO5ebQkmzPmrqHHMJPKBclj0G9Tjm7ZqBcC-yBJpGHm4a8H-NytirHY3W-aD_3FBniMze4qDM5xmnb5R2-LyZDxZ2WAklTQ9VoCXETI6MBQwsMxQ0AHo.SHe2tqqphIQpZHi3N_tBzXp0y3J7nhCF9YW4789RmH8&dib_tag=se&keywords=old%2Bschool%2Blabs%2Bcreatine%2Bfor%2Bwomen&qid=1777044993&s=hpc&sprefix=old%2Bschool%2Blabs%2Bcreatine%2Bfor%2Bwom%2Chpc%2C228&sr=1-4&th=1 (Last Accessed April 24, 2026).

CLASS ACTION COMPLAINT

these products are identical to those found in gender-neutral supplements.

61.     The consequence of OSL's deceptive misconduct is that female consumers, such as Plaintiff Orozco and Class Members, are misled into believing there is a product that is formulated and manufactured specifically for women. These consumers choose OSL's "women's" Creatine products over products manufactured by other companies that are honestly marketed as gender-neutral, based on the false belief that OSL's products offer unique benefits for women.

62.     OSL's deceptive marketing scheme exploits long-standing patterns of gender-based product segmentation. To that end, studies have found that "gender segmentation is ubiquitous, as more than 80% of products sold are gendered."[29]

63.     Companies like OSL capitalize on this segmentation to differentiate their products in saturated markets, even when no meaningful product differentiation exists.

### Gender-Based Marketing Discrimination and Consumer Harm

64.     OSL's practice of marketing functionally identical creatine products under a "*for Women*" and "MADE FOR WOMEN" designation is a form of discriminatory and deceptive gender-based marketing that exploits gender stereotypes and harms female consumers.

---

[29] Moshary, S., Tuchman, A., Vajravelu, "Gender-Based Pricing in Consumer Packaged Goods: A Pink Tax?," (December 16, 2021; rev. March 15, 2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3882214#.

CLASS ACTION COMPLAINT

65.    By creating and marketing the Women's Creatine Products as distinct from its "Classic" creatine product, OSL artificially segregates the creatine supplement market along gender lines where no meaningful product differentiation exists.

66.    This artificial segregation misleads female consumers into believing they should purchase a product specifically designated "*for Women*" and "MADE FOR WOMEN" to achieve their fitness and health goals, when in fact OSL offers functionally identical formulations without gender designation that would work equally well.

67.    Class Members, including Plaintiff Orozco, are induced to believe that the Women's Creatine Products contain unique ingredients, formulations, or benefits tailored to women's bodies and physiology.

68.    Plaintiff Orozco specifically believed the Women's Creatine Product would make her leaner without added bulk and would not cause bloating, benefits she associated with a product designed for women.

69.    OSL's Gender Based Marketing Representations perpetuate harmful stereotypes about women's bodies, fitness needs, and physiology. By suggesting that women require or should use a specially formulated "Women-Concentrated" creatine product, OSL reinforces the false notion that women's bodies require fundamentally different supplements than those used by men or the general population.

70.    These stereotypes are particularly pernicious in the fitness and

CLASS ACTION COMPLAINT

supplement industry, where women have historically been marketed products based on appearance-focused goals (such as "Booty-Building") rather than performance and health outcomes.

71.    OSL's marketing scheme limits consumer choice by creating confusion about which product is appropriate for female consumers. Rather than choosing among creatine products based on actual product attributes such as quality, price, flavor, or ingredient sourcing, OSL's deceptive Gender Based Marketing Representations steers women toward the Creatine products based on false representations of gender-specific formulation.

72.    Female consumers who purchase the Women's Creatine Products pay for and receive a product that is marketed based on false premises about gender-specific formulation, when the product they receive is functionally identical to gender-neutral alternatives they could have purchased.

73.    Had female consumers, including Plaintiff Orozco, known that the Women's Creatine Products contain no ingredients or formulations that provide unique benefits for women, they would not have purchased these products or would have purchased honestly marketed gender-neutral creatine supplements instead.

74.    OSL's marketing scheme deprives female consumers of the ability to make informed purchasing decisions. By falsely representing that the Women's Creatine Products are specially formulated for women, OSL prevents consumers from accurately comparing the Women's Creatine Products to other creatine supplements

20

CLASS ACTION COMPLAINT

on the market.

75.    Female consumers are unable to evaluate whether they are receiving value for their purchase when OSL misrepresents the fundamental nature of the Women's Creatine Products. The value proposition OSL presents (a creatine product specially designed for women's bodies) does not exist.

76.    OSL's conduct is particularly harmful because it targets women who are actively seeking products designed to support their health and fitness goals. These consumers are exercising reasonable care by looking for products suited to their needs, but OSL exploits this care by falsely representing that the Women's Creatine Products are uniquely formulated for women.

77.    Even without charging higher prices for the Creatine, OSL's gender-based marketing constitutes actionable deceptive conduct. OSL induces female consumers to purchase specific products based on false representations of gender-specific formulation, thereby obtaining sales and profits it would not otherwise have obtained had it marketed its products truthfully.

78.    The harm to female consumers extends beyond the individual transaction. OSL's deceptive Gender Based Marketing Representations contributes to a marketplace environment in which women are routinely misled about product differentiation and are denied the opportunity to make purchasing decisions based on accurate information about product formulation and benefits.

**Defendant's Knowledge and Intent**

79.      As the designer, formulator, manufacturer, and marketer of all of its creatine products, including both the Creatine products at issue here, and the "Classic" Creatine Monohydrate, OSL knew or should have known that its representations about the Creatine being specially formulated or designed "for Women" were false.

80.      OSL controls the formulations of all its products and knows that the Women's Creatine Products contain the same 5 grams of creatine monohydrate per serving as its "Classic" product, and that the additional ingredients (hydrolyzed bovine collagen and BCAA 2:1:1) provide no unique physiological benefit to women versus men.

81.      OSL intentionally created and marketed the Women's Creatine Products as a separate product line, despite knowing the formulations were identical to its "Classic" product, in order to capture market share among female consumers and increase sales by appealing to women seeking products designed specifically for their bodies and fitness goals.

82.      OSL knew that female consumers would interpret the Gender Based Marketing Representations, including "for Women," "Women-Concentrated Formula," "Designed for Women," and "Women-Centric" to mean that the products contained different or specially formulated ingredients for women's specific needs and would provide unique benefits tailored to women's bodies and physiology.

83.      OSL bolsters its Gender Based Marketing Representations by promoting that it has "Clinically Studied Ingredients," as well as third-party testing

22
CLASS ACTION COMPLAINT

and other quality validations[30] to induce consumers into believing that the Creatine and other products pass the highest testing and industry standards for the quality of the ingredients used.

84.    OSL's use of Gender Based Marketing Representations, including pink and white colors, female-focused imagery and language such as "Booty-Building," and representations that the products are "Backed By Thousands of Happy Women," was a deliberate strategy to create the false impression of product differentiation based on gender where no such differentiation exists.

85.    OSL's comparison chart on its website, which represents that its "Women Concentrated Formula" is a distinguishing feature that competing brands lack, demonstrates OSL's intentional effort to mislead consumers into believing its Creatine products contain unique formulations when they do not.

86.    OSL's use of different unit presentations for identical amounts of creatine (marketing the women's product as containing "5g" while marketing the "Classic" product as containing "5,000mg") demonstrates OSL's deliberate intent to create a false appearance of differentiation and to make the women's product appear to contain a smaller, more tailored amount when the amounts are identical.

---

[30] https://shop.oldschoollabs.com/pages/about-us?_su_rec=acXMdOmwhPWkJ7B2I0-ji1wO4SkNJr604Z4yF5ZOfUvYjh_Ams844yspiNkF1ToRavBFpaQ3EVT3Qj_omzNWNDgEJFqk_dxF760d8k3_tYeeol67p2MLzKysdNpCHNBQdHFFvOMC4lF01y_xdKqn33zn7jTjSITK6UjJAzZ5LUbM1h9YWrKCNXfb4PuH48NOJuSmLwV6ZVQo0EUw2TkUw_sujE7GmsAgVPr0hZcohPKYl__bSwwOhr-tICa5Y1oLoeZDvvIkb9AdgBoBF5zfs4WFulYgeE0FKE20siyeZY9-Dn6HKH0nBnaxog&_su_rec_id=49afa933-fcc1-4b69-b659-a024c123f394-1778001863 (Last Accessed May 5, 2026).

87.    OSL intended to deceive female consumers and induce them to purchase the Creatine based on false representations that the products were specially formulated for women, knowing that these representations would cause consumers to purchase OSL's products rather than honestly marketed gender-neutral alternatives.

88.    OSL's conduct was willful, knowing, and malicious. Despite claiming to conduct "extensive product research backed by sports nutrition science" and representing its products as "clean, tested, premium supplements," OSL deliberately misled consumers through false gender-based marketing claims. OSL's systematic and ongoing deceptive marketing scheme warrants an award of punitive damages to punish OSL's misconduct and deter similar conduct in the future.

**PLAINTIFF'S FACTS**

89.    In October/November 2024, Plaintiff Orozco was working out regularly and had seen videos online discussing the benefits of creatine supplementation for fitness and athletic performance.

90.    Plaintiff was specifically looking for a creatine product that was designed and manufactured to support women and their fitness goals.

91.    Plaintiff sought out a women's creatine product because many of the videos and information she encountered indicated that creatine products could have possible bloating or other negative side effects.

92.    Plaintiff believed that a product specifically designed for women would avoid these issues and would make her leaner, without added bulk, and would not

24

CLASS ACTION COMPLAINT

make her bloat.

93.     Plaintiff viewed OSL's Creatine Monohydrate for Women product on Amazon.

94.     On Amazon and through OSL's marketing materials, Plaintiff saw and relied upon OSL's representations that the product was "CREATINE MONOHYDRATE *for Women*," that it was "Designed for Women," and that it featured a "Women-Concentrated Formula."

95.     The product packaging displayed pink and white colors and design elements that reinforced to Plaintiff that this product was specifically engineered for women's bodies.

96.     Plaintiff also saw and relied upon OSL's representations that the product was supported by quality standards, including that it was "Third-Party Lab Tested" and backed by "Over 50,000 happy customers."

97.     Based on these representations, Plaintiff believed that OSL's Women's Creatine Product would provide benefits specifically designed for her as a woman, including helping her achieve a leaner physique without unwanted bulk and avoiding bloating that she associated with gender-neutral creatine products.

98.     It was very important to Plaintiff that the product she purchased was specifically designed for women. This was a key factor in her decision to purchase OSL's Women's Creatine Product.

99.     In reliance on OSL's representations, Plaintiff purchased the Creatine

25

CLASS ACTION COMPLAINT

Monohydrate for Women canister from Amazon in October/November 2024.

100.    Had Plaintiff known that the Women's Creatine Product contained no ingredients or formulations that provided any unique benefit for women and was functionally identical to OSL's "Classic" creatine product and other gender-neutral creatine supplements, she would not have purchased the Women's Creatine Product.

101.    Alternatively, had Plaintiff known the truth about the identical formulation, she would have purchased a different, honestly marketed gender-neutral creatine product at the same or a lower price.

102.    Plaintiff paid money for the Women's Creatine Product based on OSL's false and misleading representations about the product being specifically designed and formulated for women.

103.    As a result of OSL's deceptive practices, Plaintiff has suffered injury in the form of economic loss and loss of the benefit of her bargain. Plaintiff paid for a product marketed as having unique formulation and benefits for women when no such differentiation existed.

## FED. R. CIV. P. 9(b) ALLEGATIONS

104.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Defendant is in the best position to know its representations, omissions, and the truth about the Creatine during the relevant time period, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following with

particularity:

105.    **WHO:** Defendant made material misrepresentations and/or omissions of fact by and through marketing and advertising, labeling, third-party merchants, websites, and product packaging, as described herein.

106.    **WHAT:** Defendant's Gender Based Marketing Representations for the Creatine employs explicit gender-based language, claims, and design cues that signal the products are specifically engineered for women, even where the primary ingredient- creatine- is the same amount as the corresponding "Classic" product. Contrary to Defendants' express representations and their failure to clearly and adequately qualify those representations, the Creatine contains no female-functional benefits, nor do they include any ingredients or formulation which would support the Gender Based Marketing Representations.

107.    **WHERE:** Defendant's material misrepresentations and/or omissions were made in their marketing and advertising materials, their website, on the packaging of the Creatine, and through third-party merchants.

108.    **WHEN:** Defendants made the material misrepresentations and/or omissions detailed herein at all times relevant, including when Plaintiff and Class Members purchased the Creatine and throughout the applicable Class Periods.

109.    **WHY:** Defendants engaged in material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and the consuming public into purchasing the Creatine instead of a gender

neutral product, and deterring the consuming public from investigating whether the Creatine had any additional formulation or functional differences which might justify the Gender Based Marketing Representations.

110.    **HOW:** Defendants made affirmative representations and/or failed to disclose material facts regarding the Creatine across its uniform marketing and advertising, including the Creatine packaging as described herein.

111.    **INJURY:** Plaintiff and Class Members purchased the Creatine when they otherwise would not have but for Defendant's misrepresentations and/or omissions.

## CLASS ACTION ALLEGATIONS

91.    Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of herself and the members of the following classes:

> **Nationwide Class**: During the maximum period permitted by law, all persons residing in the United States who purchased the Creatine products for personal use and not resale.

In addition, or alternatively, Plaintiff brings this action on behalf of herself and the members of the following subclasses:

> **Multi-State Statutory Consumer Protection Subclass**:[31] During the

[31] While discovery may alter the following, Plaintiff assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Civil Code §§ 1750, *et seq*.), (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), and (Cal. Bus. & Prof. Code §§ 17500, *et seq*.);; Florida (Fla. Stat. § 501.201, *et seq*.);; Illinois (815 ICLS § 505/1, *et seq*.);; Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.);; Michigan (Mich. Comp. Laws § 445.901, *et*

maximum period permitted by law, all persons residing in the States of California and Illinois, or any state with similar laws, who purchased the Creatine products for personal use and not resale.

**Multi-State Consumer Fraud Subclass**:[32] During the maximum period permitted by law, all persons residing in the States of California and Illinois, or any state with similar laws, who purchased the Creatine products for personal use and not resale.

**California Subclass**: During the maximum period permitted by law, all persons residing in the State of California who purchased the Creatine products for personal use and not resale.

**Illinois Subclass**: During the maximum period permitted by law, all persons residing in the State of Illinois who purchased the Creatine products for personal use and not resale.

92.    Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) persons who properly execute and file a timely request for exclusion from the Classes. Plaintiff reserves the right to amend the Class definitions and Subclass definitions as necessary.

---

*seq.*);; Minnesota (Minn. Stat. § 325F.67, *et seq.*);; Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);; New Jersey (N.J. Stat. § 56:8-1, et seq.);; New York (N.Y. Gen. Bus. Law § 349, *et seq.*);; and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). *See Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

[32] While discovery may alter the following, Plaintiff assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California, Illinois, North Carolina, Colorado, Utah, Virginia, West Virginia, Wisconsin, and New York.

CLASS ACTION COMPLAINT

93.    **Numerosity**: The Members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands or tens of thousands of people geographically disbursed throughout the United States, the state of California, and the state of Illinois. OSL markets and sells the Creatine through its website, Amazon, Walmart, and other retailers nationwide. The number of Class Members can be determined by sales information and other records in the possession of Defendant and its authorized retailers. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Defendant.

94.    **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Creatine products that were designed, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she has incurred or will continue to incur damage as a result of purchasing a product containing no ingredients or formulations that provide unique benefits for women, despite Defendant's representations that the products were specially formulated and designed "for Women" or "for Her." Plaintiff, like all Class Members, purchased the Creatine in reliance on Defendant's false Gender Based Marketing Representations. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic fraudulent and deceptive

CLASS ACTION COMPLAINT

behavior that was deliberate, includes material misrepresentations and omissions, and results in the same injury to all Class Members.

95.    **Commonality**: Common questions of law and fact exist as to all Members of the Classes. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

    a.  Whether Defendant created, formulated, designed and/or manufactured the Creatine and other creating products;

    b.  Whether Defendant created, designed, reviewed, and/or approved the marketing of the Creatine, including the products' names, packaging, and labeling;

    c.  Whether there are any substantial differences in the ingredients and/or materials used to manufacture the Women's Creatine Products and the "Classic" Creatine Monohydrate or other gender-neutral creatine products;

    d.  Whether there are any substantial differences in the manufacturing process of the Women's Creatine Products versus the "Classic" Creatine Monohydrate or other gender-neutral creatine products;

    e.  Whether there are any differences in the cost of manufacturing the Women's Creatine Products versus the "Classic" Creatine Monohydrate or other gender-neutral creatine products;

    f.  Whether there is any gender-neutral reason for marketing the Women's Creatine Products as specially formulated or designed "for Women";

    g.  Whether creatine monohydrate, hydrolyzed bovine collagen, and BCAA 2:1:1 provide any unique physiological benefits to women versus men or the general population;

    h.  Whether Defendant misrepresented the Creatine as having qualities, formulations, or benefits specific to women;

CLASS ACTION COMPLAINT

i. Whether Defendant omitted material information regarding the actual differences, or lack thereof, when it marketed the Women's Creatine Products;

j. Whether Defendant's Gender Based Marketing Representations were false and misleading;

k. Whether Defendant's gender-based marketing constitutes an unfair, deceptive, or fraudulent practice under California and Illinois law;

l. Whether Defendant knew or should have known that the Women's Creatine Products contained the same ingredients and formulations as its "Classic" Creatine Monohydrate and other gender-neutral creatine products;

m. Whether Defendant's conduct violated public policy;

n. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o. Whether Defendant engaged in false or misleading advertising;

p. Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Creatine as specially formulated for women when they contain no ingredients or formulations that provide unique benefits for women;

q. Whether Defendant violated Cal. Bus. & Prof. Code § 17500, et seq. (FAL);

r. Whether Defendant violated Cal. Civ. Code §§ 1750, et seq. (CLRA);

s. Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, et seq. (UCL);

t. Whether Defendant violated 815 ILCS 505/1, et seq. (ICFA);

u. Whether Plaintiff and the Class Members are entitled to damages, including compensatory, exemplary, punitive, and statutory damages, and the amount of such damages;

v. Whether Plaintiff and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

32

CLASS ACTION COMPLAINT

w.  Whether Plaintiff and the other Class Members are entitled to injunctive, declaratory, or other equitable relief.

96.     **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer product, misrepresentation, false advertising, and gender-based marketing discrimination class actions, and Plaintiff intends to prosecute this action vigorously.

97.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein unless enjoined by the Court. Plaintiff and Class Members will remain at risk of being deceived by Defendant's false and misleading Gender Based Marketing Representations as long as Defendant continues to market and sell the Creatine with representations that they are specially formulated or designed "for Women" or "for Her" when they contain no ingredients or formulations that provide unique benefits for women. Defendant has acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Classes as a whole. Injunctive relief is necessary and appropriate to prevent Defendant's ongoing deception of female consumers and to require Defendant to market its products truthfully.

CLASS ACTION COMPLAINT

98.     **Predominance and Superiority**: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims compared to the expense and burden of individual prosecution, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

99.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

100.    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding

CLASS ACTION COMPLAINT

declaratory relief with respect to the Classes as a whole appropriate.

101. Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of this controversy. The common questions include whether Defendant's uniform marketing and advertising representations that the Women's Creatine Products are specially formulated or designed "for Women" are false and misleading when the products contain no ingredients or formulations that provide unique benefits for women.

102. All Class Members were exposed to the same deceptive marketing scheme. Defendant's representations about the Women's Creatine Products being "Designed for Women," featuring a "Women-Concentrated Formula," and being "Women-Centric" were uniformly disseminated to all potential purchasers through Defendant's website, product packaging, Amazon, Walmart, and marketing materials.

103. All Class Members purchased products with identical formulations that were falsely represented as specially formulated for women. The injury to all Class Members flows from the same core set of false representations: that the Women's Creatine Products contain unique formulations, ingredients, or benefits for women when they do not.

104. Defendant's centralized control over the design, formulation, manufacture, and marketing of the Creatine means that proof of Defendant's misconduct can be established through common evidence applicable to all Class

Members. The falsity of Defendant's gender-based marketing representations can be proven through examination of the ingredient lists, formulations, and scientific evidence regarding the physiological effects of creatine monohydrate, hydrolyzed bovine collagen, and BCAA 2:1:1, which are uniform across all Class Members' purchases.

105.   Individual issues, if any, are minimal and do not predominate over the common questions. Any individual questions regarding the amount of damages suffered by individual Class Members can be efficiently resolved through formulaic calculations based on purchase prices and dates, which are matters of simple proof.

106.   Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

107.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CALIFORNIA CIVIL CODE § 1750 ET SEQ.**
**(On Behalf of Plaintiff and the Nationwide, or alternatively, Multi-State and/or California Subclasses)**

108.   Plaintiff brings this count on behalf of herself and the Nationwide, or alternatively, Multi-State and/or California Subclasses and repeats and re-alleges all previous paragraphs as if fully included herein.

109.   The conduct described arose out of and herein took place in the State of California, where OSL is headquartered, and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.

110.   Plaintiff and Class Members are "consumers" as defined by Cal. Civ. Code § 1761(d).

111.   Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

112.   The Creatine are "goods" as defined by Cal. Civ. Code § 1761(a).

113.   Plaintiff's and Class Members' purchases of the Creatine products are "transactions" as defined by Cal. Civ. Code § 1761(e).

114.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770(a)(5) by representing that the Creatine products have characteristics, ingredients, uses, or benefits that they do not have, specifically by representing that the products are specially formulated or designed "for Women," "for Her," and feature a "Women-Concentrated Formula" when they contain no ingredients or formulations that provide unique benefits for women.

115.   Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770(a)(7) by representing that the Creatine products are of a particular standard, quality, or grade when they are not, specifically by representing that the products are specially formulated for women when they are functionally identical to gender-neutral creatine products.

CLASS ACTION COMPLAINT

116. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770(a)(9) by advertising the Creatine products with the intent not to sell them as advertised, specifically by advertising the Creatine using the Gender Base Marketing Representations when Defendant knew the products contained no unique formulations or benefits for women.

117. Defendant's misrepresentations and omissions were material to Plaintiff and Class Members. A reasonable consumer would consider the representations that a product is specially formulated and designed for women to be important in deciding whether to purchase the product.

118. As a result of Defendant's violations of the CLRA, Plaintiff and Class Members suffered injury in fact and lost money and property in that they purchased products that were not as Defendant represented them to be.

119. Plaintiff and Class Members put OSL on notice via letter dated June 9, 2026 (served June 16, 2026); however, OSL has not yet responded.

120. Plaintiff and Subclass Members seek injunctive relief, restitution, actual damages, and reasonable attorneys' fees and costs pursuant to the CLRA.

### COUNT II
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL"),**
**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 ET SEQ.**
**(On Behalf of Plaintiff and the Multi-State and/or California Subclasses)**

121. Plaintiff brings this count on behalf of herself and the Multi-State and/or California Subclass and repeats and re-alleges all previous paragraphs as if fully

38

included herein.

122.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

123.    The FAL provides that it is unlawful for any person to disseminate any statement in advertising that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

124.    Defendant, when it marketed, advertised, and sold the Creatine Products, represented to Plaintiff and California Subclass Members that the products were specially formulated and designed for women, through the Gender Based Marketing Representations, despite the fact that the Creatine products contained no ingredients or formulations that provide unique benefits for women.

125.    At the time of its misrepresentations, Defendant was either aware that the Creatine contained no unique formulations or benefits for women or was aware that it lacked the information and knowledge required to make such representations truthfully. Defendant concealed and omitted and failed to disclose this information to Plaintiff and California Subclass Members.

126.    Defendant's Gender Based Marketing Representations regarding the Creatine were false, misleading, and likely to deceive Plaintiff and other reasonable consumers.

CLASS ACTION COMPLAINT

127.    In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the Creatine products, Plaintiff and California Subclass Members purchased the Creatine products.

128.    Had Defendant disclosed the true nature of the Women's Creatine Products (that they contained no ingredients or formulations that provide unique benefits for women), Plaintiff and California Subclass Members would not have purchased the Women's Creatine Products or would have paid substantially less for them.

129.    As a direct and proximate result of Defendant's actions, Defendant has received ill-gotten gains and profits, including money from Plaintiff and California Subclass Members who paid for the Creatine products.

130.    Plaintiff and California Subclass Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant by means of its deceptive or misleading representations.

## COUNT III
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL"),
### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*
### (On Behalf of Plaintiff and the Multi-State and California Subclasses)

131.    Plaintiff brings this count on behalf of herself and the Multi-State and/or California Subclass and repeats and re-alleges all previous paragraphs as if fully included herein.

40

CLASS ACTION COMPLAINT

132. Defendant violated the UCL, pursuant to Cal. Bus. & Prof. Code § 17200, by engaging in "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business practices."

133. Defendant's actions, as alleged herein, constitute unlawful business practices in violation of the UCL, as described above.

134. Defendant's conduct was unfair because it offends public policy and because the harm to consumers outweighs any benefit. Defendant's practice of marketing functionally identical creatine products under false gender-based claims exploits gender stereotypes, misleads female consumers, and deprives them of the ability to make informed purchasing decisions. There is no countervailing benefit to consumers or competition from allowing Defendant to deceptively market its products based on false gender differentiation.

135. Defendant's conduct was fraudulent because it was specifically designed to and did induce Plaintiff and California Subclass Members to purchase the Creatine products based on false Gender Based Marketing Representations that the products were specially formulated for women. Defendant's misrepresentations were likely to deceive reasonable consumers.

136. Plaintiff and California Subclass Members reasonably and justifiably relied on Defendant's conduct alleged herein. But for such conduct, Plaintiff and California Subclass Members would not have purchased the Creatine products.

137. As a result of Defendant's conduct, Plaintiff and California Subclass

41

CLASS ACTION COMPLAINT

Members have suffered injury in fact, lost money, and lost property in that they purchased and paid for products based on false representations.

138.   Plaintiff and California Subclass Members seek to recover from Defendant restitution of earnings, profits, compensation, and benefits obtained as a result of the practices that are illegal under the UCL, as well as injunctive relief.

## COUNT IV
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT ("ICFA"), 815 ILCS 505/1, *ET SEQ.*
### (On Behalf of Plaintiff Orozco Individually and on Behalf of the Multi-State and/or Illinois Subclasses)

176.   Plaintiff brings this count on behalf of herself and the Multi-State and/or Illinois Subclasses and repeats and re-alleges all previous paragraphs as if fully included herein.

177.   Plaintiff Orozco and Subclass Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

178.   At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

179.   Plaintiff Orozco and Subclass Members are "consumers" who purchased the Creatine products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

180.   The ICFA prohibits engaging in any "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2.

181.   The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent

42

CLASS ACTION COMPLAINT

business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

182.   Defendant's conduct, as described herein, reached into and took place within the state of Illinois and throughout the United States, including Illinois, and constituted unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ILCS 505/1, *et seq.*

183.   Defendant engaged in deceptive trade practices in violation of the ICFA by falsely representing that the Creatine products were specially formulated or designed for women when they contained no ingredients or formulations that provide unique benefits for women, and by failing to disclose and actively concealing that the Creatine ingredients do not differ from gender-neutral creatine products.

184.   Defendant violated the ICFA and Section 2 of the UDTPA by representing that the Creatine products have characteristics or benefits that they do not have and that the Creatine products "are of a particular standard, quality or grade" when they are of another. 815 ILCS 505/2; 815 ILCS 510/2(7).

185.   Defendant advertised the Creatine products with intent not to sell them as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9). Specifically, Defendant advertised the Creatine products as specially formulated for women, when

Defendant knew the products contained no unique formulations or benefits for women.

186. Defendant engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or of misunderstanding in violation of 815 ILCS 505/2 and 815 ILCS 510/2(3). Defendant's Gender Based Marketing Representations created confusion about whether the Creatine contained unique formulations for women when they did not.

187. Defendant has known that the Creatine contain identical formulations to its "Classic" Creatine Monohydrate and other gender-neutral creatine products since it began designing, formulating, and manufacturing these products. However, Defendant continued to allow unsuspecting purchasers to buy the Creatine products based on false representations that the products were specially formulated for women.

188. Defendant owed Plaintiff Orozco and Subclass Members a duty to disclose the true nature of the Creatine products and that they contained no unique formulations or benefits for women because Defendant: (a) possessed exclusive knowledge of the actual formulations and knew the Creatine product ingredients were not unique and were the same as what is used in gender neutral products; (b) intentionally concealed this fact from Plaintiff and Subclass Members through gender-based marketing; and/or (c) made incomplete representations about the Creatine products being specially designed for women generally, while withholding material facts from Plaintiff and Subclass Members that contradicted these

representations.

189.    Defendant intended that Plaintiff Orozco and Subclass Members would, in the course of their decision to expend monies in purchasing the Creatine products, reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the formulation and benefits of the Creatine products.

190.    Defendant's failure to disclose and active concealment that the Creatine contained no unique formulations or benefits for women were material to Plaintiff Orozco and Subclass Members and any reasonable consumer would have considered those facts important in deciding whether to purchase the Women's Creatine Products.

191.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff Orozco and Subclass Members to be deceived about the formulation and benefits of the Creatine, and that such products were specially formulated to provide unique benefits for women when they were not.

192.    Although Defendant was aware that the Creatine products contained no unique formulations or benefits for women at the time Plaintiff Orozco and Subclass Members purchased their products, Defendant failed to disclose this fact to Plaintiff and Subclass Members and continued to market and sell the Creatine with false gender-based claims.

193.    Plaintiff Orozco and Subclass Members reasonably relied upon Defendant's misrepresentations and omissions and expected that the Women's

Creatine Products would be specially formulated for women and would provide unique benefits tailored to women's bodies and fitness goals. Plaintiff Orozco specifically believed the Women's Creatine Products would make her leaner without added bulk and would not cause bloating, benefits she associated with a product designed for women.

194.    Defendant's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Plaintiff Orozco and Subclass Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers. Defendant's systematic use of false gender-based marketing to mislead female consumers exploits gender stereotypes and deprives women of the ability to make informed purchasing decisions.

195.    Plaintiff Orozco and Subclass Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Creatine products.

196.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff Orozco and Subclass Members have suffered ascertainable loss of monies and property, caused by Defendant's misrepresentations, false advertising, and failure to disclose material information regarding the true nature and formulation of the Creatine.

197.    Had they been aware that the Creatine contained no unique formulations

46

CLASS ACTION COMPLAINT

or benefits for women, Plaintiff Orozco and Subclass Members either would have paid less for the Creatine or would not have purchased them at all or on the same terms.

198.    Alternatively, Plaintiff Orozco and Subclass Members would have purchased honestly marketed gender-neutral creatine products instead. Plaintiff Orozco and Subclass Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

199.    Defendant's violations of the ICFA were willful and knowing. Defendant, as the designer, formulator, and manufacturer of all its creatine products, knew that the Creatine products contained no unique formulations or benefits for women and deliberately created and implemented a marketing scheme to mislead female consumers through false gender-based claims.

200.    Plaintiff Orozco and Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorneys' fees, pursuant to section 815 ILCS 505/10a of the ICFA. Plaintiff Orozco and Subclass Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

### COUNT V
### FRAUDULENT MISREPRESENTATION
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the Multi-State, California, and/or Illinois Subclasses)**

201.    Plaintiff brings this count on behalf of herself and the Multi-State,

California, and/or Illinois Subclasses and repeats and re-alleges all previous paragraphs as if fully included herein.

202.   Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant knowingly represented to Plaintiff and others similarly situated, through product labeling, packaging, marketing, and advertising, that the Creatine products were specially formulated and designed for women.

203.   Specifically, Defendant represented through its packaging, website, Amazon listings, and marketing materials that the Women's Creatine Products were "Designed for Women," featured a "Women-Concentrated Formula," were "Women-Centric," "Women-focused," and "for Her," and were "Backed By Thousands of Happy Women."

204.   These representations were made by Defendant through its product packaging (which Defendant designed and affixed to the Women's Creatine Products before sale), its website at shop.oldschoollabs.com, product listings on Amazon and Walmart, as well as other online retailers, marketing materials, and advertising.

205.   These representations were made at the time Plaintiff purchased the the Creatine products in October/November 2024, and continuously before and since that time to all potential purchasers of the Women's Creatine Products.

206.   However, as described above, these representations are false, unfair, deceptive, and misleading.

207.   Defendant, as designer, formulator, and manufacturer of all of its

creatine products, knew such representations were false. Defendant knew that the Creatine products contained the identical amount of creatine monohydrate (5 grams per serving) as its "Classic" Creatine Monohydrate and that the additional ingredients (hydrolyzed bovine collagen and BCAA 2:1:1) provided no unique physiological benefits to women versus men or the general population.

208.   Defendant knew there is no such thing as creatine that can be "designed or manufactured with a female specific concentrated formula" or in a "women-centric" manner, as creatine monohydrate functions identically in all human bodies regardless of gender.

209.   Despite this knowledge, Defendant continued over a period of years to market and sell the Creatine products with false representations that they were specially formulated for women.

210.   Defendant also knew- and controlled- third-party retailers, including Amazon and Walmart, were advertising the Creatine products in the same false and misleading manner based on Defendant's representations. Defendant designed, manufactured, and affixed the labeling to the Creatine before supplying them to retailers.

211.   Defendant omitted, concealed, and failed to disclose to Plaintiff and Class Members that the Creatine did not contain any ingredients or formulations that provided unique benefits for women. Rather than disclose this information, Defendant marketed the Creatine as though it possessed qualities and formulations specifically

CLASS ACTION COMPLAINT

beneficial to women when they did not.

212.　Defendant acted intentionally by willfully and purposefully employing Gender Based Marketing Representations in order to mislead reasonable consumers into believing the Creatine had additional benefits or unique formulations absent from gender-neutral creatine products.

213.　Defendant intended that Plaintiff and Class Members would rely upon these representations in deciding whether to purchase the Creatine products.

214.　Plaintiff and the putative Class Members saw, believed, and relied upon Defendant's Gender Based Marketing Representations and related omissions in making the decision to purchase the Creatine.

215.　Plaintiff and Class Members specifically purchased the Creatine because they believed they were designed and manufactured to support women and would provide unique benefits such as leaner muscles without added bulk. These beliefs were the direct result of Defendant's specific representations that the products were "Designed for Women" and featured a "Women-Concentrated Formula."

216.　Plaintiff's and Class Members' reliance on Defendant's representations was justifiable. Reasonable consumers would understand Defendant's Gender Based Marketing Representations to mean that the products contain unique formulations, ingredients, or benefits specifically tailored for women's bodies and needs.

217.　Had Plaintiff and Class Members known that the Creatine contained no unique formulations or benefits for women and were functionally identical to OSL's

CLASS ACTION COMPLAINT

"Classic" Creatine Monohydrate and other gender-neutral creatine products, they would not have purchased the Creatine or would have purchased different, honestly marketed gender-neutral creatine supplements.

218.   As a proximate result of Defendant's intentional misrepresentations and omissions, Plaintiff and the putative Class Members were damaged in an amount to be determined at trial, including the purchase price paid for the Creatine and other economic losses.

219.   By engaging in the acts described above, Defendant's conduct was willful, knowing, and malicious, and Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## COUNT VI
## FRAUDULENT CONCEALMENT/OMISSION
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the Multi-State, California, and/or Illinois Subclasses)**

220.   Plaintiff brings this count on behalf of herself and the Multi-State, California, and/or Illinois Subclasses and repeats and re-alleges all previous paragraphs as if fully included herein.

221.   Defendant had a duty to disclose to Plaintiff and Class Members material facts regarding the Creatine Products, specifically that the Creatine products were identical in formulation to OSL's "Classic" Creatine Monohydrate and other gender-neutral creatine products and contained no ingredients or formulations that provided unique benefits for women.

222.    This duty to disclose arose from Defendant's superior knowledge as the designer, formulator, and manufacturer of all of its creatine products. Defendant knew the primary active ingredient of both the Creatine Products and the "Classic" Creatine Monohydrate were identical (5 grams of creatine monohydrate per serving) and that the additional ingredients in the Creatine products provided no unique benefits for women.

223.    This duty to disclose also arose from Defendant's Gender Based Marketing Representations. By making these affirmative representations, Defendant created a duty to disclose that, contrary to these representations, the products contained no unique formulations or benefits for women.

224.    Defendant knowingly and intentionally concealed and suppressed the material fact that the Creatine products provided no unique benefits for women.

225.    Defendant concealed this material fact by marketing the Women's Creatine Products with gender-specific packaging (pink and white colors), gender-specific product names ("Creatine Monohydrate for Women"), and gender-specific marketing claims ("Designed for Women," "Women-Concentrated Formula," "Women-Centric"), all of which created the false impression that the products contained unique formulations for women.

226.    Defendant further concealed this material fact by presenting identical amounts of creatine in different units ("5g" for the women's product versus "5,000mg" for the "Classic" product) to create a false appearance of differentiation.

CLASS ACTION COMPLAINT

227. The facts concealed by Defendant were material because a reasonable consumer would consider the fact that the Creatine products are identical in formulation to gender-neutral products to be important in deciding whether to purchase the Creatine products or to instead purchase an honestly marketed gender-neutral creatine product.

228. Female consumers, including Plaintiff, specifically sought out and purchased the Creatine products because they believed the products were specially formulated for women and would provide unique benefits tailored to women's bodies. The formulations between the Creatine products and gender-neutral products is therefore highly material to the purchasing decision.

229. Plaintiff and Class Members were unaware of these concealed and suppressed facts and could not reasonably have discovered the true facts through reasonable diligence.

230. The fact that the Creatine products contain no unique formulations or benefits for women is not apparent from Defendant's packaging, labeling, marketing, or advertising. To the contrary, all of Defendant's marketing materials affirmatively represent that the products are specially formulated for women.

231. The ingredients listed on the product packaging do not reveal that these same ingredients, in the same amounts, provide no unique benefits for women versus men or the general population. A reasonable consumer would not know from reading the ingredient list that creatine monohydrate, hydrolyzed bovine collagen, and BCAA

CLASS ACTION COMPLAINT

2:1:1 function identically regardless of the user's gender.

232. Had Plaintiff and Class Members known the true facts that Defendant concealed and suppressed, they would not have purchased the Creatine Products or would have paid less for them.

233. Plaintiff specifically would not have purchased the Creatine products had she known they contained no unique formulations or benefits for women. Plaintiff would have instead purchased an honestly marketed gender-neutral creatine product, which would have provided the same benefits at the same or potentially lower cost.

234. As a direct and proximate result of Defendant's fraudulent concealment and suppression of material facts, Plaintiff and Class Members have been damaged in an amount to be determined at trial, including the purchase price paid for the Creatine products and other economic losses.

235. Defendant's concealment and suppression of material facts was willful, knowing, and malicious. Defendant deliberately designed and implemented a targeted marketing scheme to mislead female consumers through gender-based marketing while concealing that no meaningful product differentiation existed. Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

## COUNT VII
## UNJUST ENRICHMENT
### (In the Alternative)
### (On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, the California and Illinois Subclasses)

236. Plaintiff brings this count on behalf of herself and the Nationwide Class

and repeats and re-alleges all previous paragraphs as if fully included herein.

237.    This claim is pleaded in the alternative to the other claims asserted in this Complaint, in the event any legal claims fail or are dismissed, as unjust enrichment is an equitable remedy available when legal remedies are inadequate or unavailable.

238.    Plaintiff and Class Members conferred a monetary benefit on Defendant by purchasing the Creatine based on Defendant's Gender Based Marketing Representations.

239.    Defendant has knowledge of and appreciation for this benefit, as evidenced by its receipt of revenues from sales of the Creatine to Plaintiff and Class Members throughout the United States.

240.    Defendant's retention of the benefit is unjust under the circumstances because: (a) Defendant obtained the revenue through deceptive and misleading gender-based marketing representations; (b) Defendant received payment for products that were materially different from what was represented, as the Women's Creatine Products contained no ingredients or formulations that provided unique benefits for women despite being marketed as specially formulated for women; and (c) Plaintiff and Class Members would not have conferred the benefit by purchasing the Creatine had they known the truth that the products were functionally identical to gender-neutral creatine products.

241.    It would be inequitable for Defendant to retain the benefit of payments

CLASS ACTION COMPLAINT

received from Plaintiff and Class Members without compensating them for the economic losses they sustained as a result of Defendant's deceptive conduct.

242. To the extent legal remedies are inadequate or unavailable, equitable relief in the form of restitution and disgorgement is appropriate.

243. Plaintiff and Class Members seek restitution and disgorgement of all amounts wrongfully obtained by Defendant through its deceptive marketing scheme, plus pre-judgment interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

244. Certify the proposed Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

245. Declare that Defendant's conduct violates the California Consumers Legal Remedies Act, the California False Advertising Law, the California Unfair Competition Law, the Illinois Consumer Fraud and Deceptive Trade Practices Act, and other similar state laws;

246. Award preliminary and permanent injunctive relief, including requiring Defendant to cease the deceptive marketing practices alleged herein, implement corrective advertising, and recall or relabel the Women's Creatine Products;

247. Award compensatory damages to Plaintiff and the Classes in an amount

CLASS ACTION COMPLAINT

to be proven at trial;

248.    Award statutory damages under the California consumer protection statutes, the ICFA, and other similar state laws to the maximum extent permitted by law;

249.    Award restitution and disgorgement of all ill-gotten gains obtained by Defendant through its unlawful conduct;

250.    Award treble damages under the ICFA for Defendant's willful violations;

251.    Award punitive damages for the fraud claims in an amount sufficient to punish and deter Defendant and others from similar conduct;

252.    Award Plaintiff and the Classes pre-judgment and post-judgment interest at the legal rate;

253.    Award Plaintiff and the Classes reasonable attorneys' fees and costs under the fee-shifting provisions of the CLRA, FAL, UCL, and ICFA; and

254.    Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:    July 16, 2026              Respectfully submitted,

/s/*Alex R. Straus*
Alex R. Straus (SBN 321366)
**MILBERG PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212

57
CLASS ACTION COMPLAINT

(866) 252-0878 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

Harper T. Segui*
**LEE SEGUI PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@leesegui.com

Erin J. Ruben*
Thomas A. Pacheco (SBN 351445)
Kathryn Anne Robinson*
**LEE SEGUI PLLC**
421 N. Harrington St., Suite 460
Raleigh, NC 27603
eruben@leesegui.com
tpacheco@leesegui.com

***Attorneys for Plaintiff and the Class***

* Applications for admission *pro hac vice* forthcoming

58

CLASS ACTION COMPLAINT